# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 06 CR 222 |
| | ) | Judge Blanche M. Manning |
| JULIO MACIAS, ANGEL FLORES, and | ) | |
| JOSE LOPEZ. | ) | |

## MEMORANDUM AND ORDER

Defendants Julio Macias, Angel Flores, and Jose Lopez are charged with possession with intent to distribute, and conspiracy to possess and distribute, more than five kilograms of cocaine. *See* 21 U.S.C. §§ 846, 2. They have joined in each others' motions to suppress evidence, which the court denies in part and orders a suppression hearing on the remainder. The defendants have also filed various other pretrial motions, which the court grants in part and denies in part.

## BACKGROUND[1]

Defendant Julio Macias decided to use a shipping company to truck his van from California to Chicago. Unfortunately for Macias, the shipping company he chose was under surveillance by federal drug enforcement agents investigating another matter. The agents became suspicious when Macias showed up without a reservation and paid his shipping charge with cash. After Macias left, agents used a trained dog to sniff for drugs without first obtaining a warrant to do so. The dog did not detect drugs while sniffing the van from the outside, but when agents let the dog inside the van it alerted the agents to the presence of drugs in both rear quarter panels of the van. Based upon the dog's detection, the agents obtained a warrant and searched the van,

---

[1]The court briefly reviews the facts as set forth in the briefs filed by the defendants and the government, not all of which the parties agree upon. However, in ruling on the motions to suppress the court will rely only on those facts that are uncontested.

where they allegedly found eleven kilograms of cocaine behind one of the rear quarter panels, and an additional two kilograms behind the other. Field tests allegedly confirmed that the drugs were cocaine.

Based upon their discovery, agents obtained another warrant, this time authorizing them to install a mobile tracking device inside the van, as well as electronic trigger devices that would signal them if the rear quarter panels were accessed. The agents installed the monitoring devices after the van arrived at the shipping carrier's facility in Frankfort, Illinois. As a precautionary measure, the agents also confiscated the cocaine and replaced it with fake cocaine.

After the van had been wired by agents, the shipping company called Macias to tell him that his vehicle had arrived. A few hours later, Macias showed up at the shipping company in a vehicle with two other individuals, later identified as co-defendants Angel Flores and Jose Lopez. Macias recovered his van and drove it from Frankfort to a garage behind a home on Keating Avenue in Chicago, trailed the entire trip by federal agents. Apparently Macias closed the overhead garage door behind him. Agents also trailed the vehicle driven by Flores and Lopez, which they allegedly observed drive around the blocks surrounding the Keating home several times before finally parking directly behind the door to the garage where Macias had parked his van. Initially all three defendants went into the Keating home. Later, agents observed Macias and Flores leave the home and go into the garage, where Macias' van was still parked. A few minutes later, the alarm for the trigger devices activated, signaling to agents that the rear quarter panels where the cocaine had been stashed had been accessed.

En masse, the agents drew their guns, stormed the garage, demanded that Macias and Flores open the overhead door, and eventually removed Macias and Flores from the garage,

handcuffed them, and arrested them. In the meantime, other agents stormed the Keating resident where Lopez was. Agents arrested him, handcuffed him, and took him to one agent's vehicle for questioning. Agents who remained in the home obtained consent to search it from Evilia Avila, who lived there. The search yielded a rifle, a handgun, two scales, a heat-sealing device, and an unspecified quantity of cocaine and marijuana.

After their arrests, agents read to Flores, Macias and Lopez the warnings set forth in *Miranda v. Arizona*, 384 U.S. 426 (1966). Flores exercised his rights under *Miranda* and declined to answer agents' questions, but both Macias and Lopez gave post-arrest statements that incriminated themselves and their co-defendants.

The circumstances leading up to Lopez's incriminating statements are disputed. According to the agents, Lopez made the statements only after they obtained from him a written waiver of his rights under *Miranda*. Lopez acknowledges waiving his *Miranda* rights, but contends that the waiver was coerced. Specifically, he alleges that when agents arrested him inside the Keating residence, they threw him to the floor and kept him there for five minutes. After removing him from the residence, they allegedly threw him to the ground outside and put his face "atop several piles of dog excrement." They allegedly left him in the dog excrement for 20 minutes, and then put him into an agent's vehicle and attempted to question him. When Lopez declined to answer the questions and asked for a lawyer, one of the agents allegedly began hitting Lopez repeatedly in the jaw, face, and stomach. As a result of the alleged beating, Lopez suffered injuries to his eye and a cracked tooth. His injuries were noted by the Berwyn fire and police departments.

The defendants move to suppress the evidence obtained by police during the search of Macias' car in California as well as the searches of the garage and home on Keating Avenue in Chicago.[2] In addition, Lopez moves to suppress his incriminating statements to police, which he contends were coerced. All three defendants have also joined in other pretrial motions in which they seek preservation of agents' notes, immediate disclosure of favorable evidence, and notice of the government's intent to use evidence of the defendants' other crimes. Finally, the defendants seek to sever their trials. The court addresses each motion in turn.

I.      **Motion To Suppress Evidence Obtained During Search of Macias' Car in California**

Defendant Macias attacks the lawfulness of the search of his car in California on two fronts. First, he contends that agents lacked probable cause to enter his vehicle and search it with a drug-sniffing dog. The fourth amendment to the United States Constitution protects against "unreasonable searches and seizures," and requires that search warrants be issued only "upon probable cause." U.S. Const. amend. IV. However, the constitution protects against warrantless searches only where an individual has a legitimate expectation of privacy. *See United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007). Therefore, in order to prevail, Macias bears the burden of establishing a legitimate expectation of privacy in his vehicle at the time it was searched. *See United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006). An expectation of privacy is legitimate if: (1) the defendant exhibits an actual or subjective expectation of privacy; and (2)

_____

[2]Although all three defendants have joined in all of the motions to suppress, it is not at all clear that they have standing to do so. For instance, no one contends that Flores or Lopez were in or near Macias' van when agents searched it in California. Likewise, no one contends that Lopez was in the garage in Chicago when it was searched, or that Flores or Macias were in the home when it was searched. However, unless otherwise noted and solely for purposes of expediency, the court will overlook the potential issues of standing at this time.

the expectation is one that society is prepared to accept as reasonable. *Id.*; *see also Katz v. United States*, 389 U.S. 347, 361 (1967).

As Macias correctly notes, the owner of a car normally has an expectation of privacy in the car's interior. *See, e.g., United States v. Winningham*, 140 F.3d 1328, 1331 & n.2 (10th Cir. 1998). However, the expectation is significantly less than the privacy expected in one's home or business. *See United States v. Matthews*, 32 F.3d 294, 299 (7th Cir. 1994) ("the pervasive regulation of automobiles creates a lesser expectation of privacy associated with them than, for example, a dwelling.") (internal citation and quotations omitted).

Although Macias has presented cases in which canine searches of car interiors constituted unreasonable searches, one crucial fact makes the instant search distinguishable—Macias had turned his car over to the shipping company before the search occurred. The bill of lading that Macias signed required him to provide the shipping company with the keys needed to access all areas of the van, advised him to remove all of his personal effects, disclaimed any liability for theft of items from the van, and advised Macias that other carriers or third-parties employed by the shipping company may be involved in transporting Macias' vehicle.

Based upon these circumstances, any expectation of privacy Macias had in the interior of his van was unreasonable. He had completely surrendered the van to the shipping company and gave the company the keys needed to access any area of the vehicle. Macias' agreement to do these things was much like the agreement signed by the defendants in *United States v. Young*, 350 F.3d 1302 (11th Cir. 2003), in which they gave Federal Express the right to inspect the package they had shipped. In light of Federal Express' right to inspect the package, the defendants in *Young* had given up their expectation of privacy, and agents' subsequent search of

the package was not unlawful.  *Id.* at 1307-08.  Here, Macias gave more than just the right to inspect—he gave complete access not only to the shipping company but also to any other carrier or third-party they employed.  As a result, like the defendants in *Young*, he gave up any reasonable expectation of privacy in the vehicle while under the shipping company's control.  *See also United States v. Ward*, 144 F.3d 1024, 1033 (7th Cir. 1998) (passenger had no reasonable expectation of privacy in bag while it was being transported by Greyhound).  Based upon the lack of any reasonable expectation of privacy, the agents' use of a dog to sniff the interior of his van was not an unlawful search.

Second, Macias contends that the warrant to search his car was invalid because it was not based upon probable cause.  Specifically, Macias argues that in order to obtain a search warrant based upon a positive alert from a narcotics dog, the application for the warrant must detail the dog's reliability.  *See, e.g., United States v. Cedano-Arellano*, 332 F.3d 568, 573 (9th Cir. 2003) ("a canine sniff alone can supply the probable cause necessary for issuing a search warrant if the application for the warrant establishes the dog's reliability.")  Macias argues that the application for the warrant contains no information about the dog's reliability, such as his rate of accuracy, the number of false positive alerts he has given, or his "ratio of hits to misses."

Although Macias has cited a number of cases in which courts took into account a narcotics dog's accuracy and false positive rates when assessing the dog's reliability, none of the cases held that a warrant issued without such information is fatally defective.  To the contrary, the Seventh Circuit upheld a warrant issued based solely upon an agent's statements that a narcotics dog had "graduated from a training class in drug detection in October 1978" and "has proven reliable in detecting drugs and narcotics on prior occasions."  *United States v. Klein*, 626

F.2d 22, 27 (7th Cir. 1980); *see also United States v. Limares*, 269 F.3d 794, 798 (7th Cir. 2001) (agents' statement in an affidavit that a drug-sniffing dog was reliable provided probable cause for search warrant: "An affidavit for a search warrant thus need not describe training methods or give the dogs' scores on their final exams. It is enough if a dog is reliable in the field.")

The agent in the instant case provided much more information than that. For instance, he stated that the dog "has received only 18 hours of training during which he has found over 140 narcotics training aids of actual controlled substances," "is certified for use by the Los Angeles Police Department and the California Narcotics K-9 association," and that he "has been used in over 40 cases in which he seized over 14,000 grams of cocaine, 1200 grams of heroin, 74,000 grams of marijuana, and 1770 grams of methamphetamine." In addition, the agent had 16 years' experience as an officer with the K-9 unit, during which time "he has participated in the training and handling of narcotic detecting K-9's." Given the dog's extensive training, his pairing with a seasoned K-9 officer, and the dog's past successes in finding vast quantities of drugs in dozens of cases, the magistrate judge who issued the warrant was entitled to credit the narcotics dog as reliable and conclude that probable cause supported the issuance of the warrant.

Accordingly, Macias' and Flores' motion to suppress the search of the car in California and evidence seized from the car is denied.

## II. Motion to Suppress Search of Keating Avenue Residence and Garage

Next, the defendants argue that agents' warrantless search of the residence and garage on Keating Avenue in Chicago was illegal because: (1) agents lacked probable cause to search the home; and (2) no exigent circumstances justified entry of either the home or the garage without a warrant. The unlawful entry by police into a person's home is the "chief evil against which the

wording of the Fourth Amendment is directed." *United States v. United States Dist. Court*, 407 U.S. 297, 313 (1972). To protect against unreasonable searches, police generally need to first obtain a warrant before entering a person's home, and a warrantless search of a home is generally considered presumptively unreasonable. *See Brigham City v. Stuart*, 126 S. Ct. 1943, 1947 (2006). The protections against unreasonable searches within a person's home are generally extended to areas within the home's curtilage, such as a nearby garage. *See United States v. Carter*, 360 F.3d 1235, 1241-43 (10th Cir. 2004).

However, exceptions exist, and warrantless searches are permitted if the exigencies of the situation "make the needs of law enforcement so compelling that the warrantless search is objectively reasonable." *Id.* at 1948. The government bears the burden of establishing exigent circumstances. *Id.* Determining whether exigent circumstances exist is an objective inquiry, based upon the totality of the circumstances known to the officers at the moment of entry into the home. *Id.* The court will first review the circumstances surrounding the officers' entry into the garage, and then review the circumstances surrounding their entry into the home.

### A.      *Search of the Garage*

During the time proceeding their entry into the garage, agents observed Macias drive his van into his garage—the same van in which they had found large quantities of cocaine. Flores and Lopez later parked their vehicle behind the garage and all three defendants entered the home. Flores and Macias then left the home and headed for the garage, where just moments later they triggered the alarms agents had placed on the rear quarter panels of the van where the cocaine had been stashed. Agents had had no prior contacts with the defendants or the residence on Keating Avenue, and therefore were unfamiliar with the surroundings.

Given the exigent circumstances, the agents' decision to storm the garage after Flores and Macias triggered the alarm was reasonable. Specifically, agents had a compelling need to enter the garage as soon as the rear quarter panels were accessed—catching the defendants in the act of accessing the panels would provide agents with evidence of their guilty knowledge. *See United States v. Hackett*, 638 F.2d 1179, 1184 (9th Cir. 1980) ("it was necessary to effect the arrest as quickly as possible in order to catch the suspects in the act of opening the false bottom thereby establishing the Defendants' guilty knowledge of the drug compartment and its contents.") The defendants argue that it was not necessary to catch them in the act because the mere fact that alarm sounded "indicated that the compartments were opened and provided all the guilty knowledge the government could have wanted or needed." The defendants are simply wrong. Only by catching the defendants in the act would agents be able to confirm that the panels were accessed by the defendants and rule out that the panels fell off by themselves, were removed inadvertently, or that the alarm sounded even though the panels had not been accessed.

Adding to the exigency of the circumstances was the agents' unfamiliarity with their surroundings. From the agents' perspective, Macias and Flores posed a risk of flight, especially given their proximity to their vehicles. The risk of flight was exacerbated by the fact that when the defendants accessed the rear panel doors and tripped the agents' alarm, they would have seen the wiring and known that they were under surveillance. Macias and Flores contend they posed no risk of flight because the garage had only one door, but the degree of exigency is based upon what the agents knew at the time, and at the time the agents' familiarity with the layout of the garage was not as intimate as the defendants'. *See United States v. Acevedo*, 627 F.2d 68, 70-71

(7th Cir. 1980) ("The agents' ability to protect against [the defendant's] escape was limited by their incomplete knowledge of the layout of the building . . . .")

Macias and Flores argue that by placing the alarm in Macias' van, agents impermissibly created the exigency of needing to catch the defendants in the act of triggering the alarm. *See United States v. Paul*, 808 F.2d 645, 647 (7th Cir. 1986) (agents may not base a warrantless search upon exigencies they created). However, in *Paul*, the court noted that the agents could have avoided the exigencies they created by employing alternative investigative methods, or by obtaining a warrant in advance. In the instant case, agents were unable to obtain a warrant in advance because they had no advance knowledge of who would retrieve the car from the shipping carrier in Frankfort, or to where the car would be driven. *See* Fed. R. Crim. P. 41(e)(2)(A) ("the warrant must identify the person or property to be searched") Furthermore, because agents did not know who would retrieve the van, or where the quarter panels would ultimately be accessed, their use of a tracking device and alarms in the van was a reasonable investigative method. *See United States v. McGregor*, 31 F.3d 1067, 1069 (11th Cir. 1994) ("a beeper was used because the identity of the ultimate holders of the cocaine and the place where the box would be opened were the focus of the inspectors' interest; and these persons and that place were not yet known.")

Based upon the totality of the circumstances, exigent circumstances supported the agents' entry into the garage. The defendants do not contend that the agents lacked probable cause, and therefore no basis exists for suppressing the evidence agents obtained.

### B.    Search of the Home

The defendants move to suppress evidence obtained during the search of the Keating Avenue residence on two grounds.  First, the defendants argue that police had no probable cause to suspect that drugs or criminal activity were occurring inside the home.  For instance, they contend that Macias, Flores and the car that allegedly transported the cocaine were all in the garage.  None of the defendants transported anything from the garage into the home, and of the three defendants, only Lopez was in the home.  Based upon these circumstances, the defendants argue that even if drug activity was suspected in the garage, agents had no probable cause to suspect the drug activity was also occurring in the home.

Second, the defendants argue that no exigent circumstances justified the agents' entry into the home without a search warrant.  According to the defendants, agents surveilling the area would have known that the only suspected drug activity was occurring in the garage, where Macias and Flores were.  Of the three defendants only Lopez was in the home, and he had not engaged in conduct that could have led agents to conclude that he was engaged in any illegal activity inside the home or that he was aware of the raid on the garage.  Based upon their account of events, the defendants argue that the agents had no reason to suspect that Lopez would flee, harm anyone else, or destroy evidence, and therefore lacked both probable cause and exigent circumstances.

The government disputes the defendants' account of events, and contends that agents had both probable cause and exigent circumstances that supported their warrantless entry into and subsequent search of the home.  According to the government, while agents stormed the garage and arrested Macias and Flores, other agents approached the residence and announced their

presence. Inside they watched Lopez shut the door to the home, turn, and run further into the home. Based upon Lopez's behavior and the events in the garage, the government argues that agents had both probable cause to search the home and exigent circumstances that justified their warrantless entry to stop Lopez as he fled. In addition, the government argues that the agents' search of the home did not depend upon probable cause because Evelia Avila, who owned and was inside the home, consented to agents' search.

While probable cause and exigent circumstances justified agents' entry into the garage, the court does not have enough information to know whether what occurred in the garage justified entering the home. For instance, the parties have not offered any evidence about how close the garage was to the home, or whether residents of the home could have seen or heard the events that unfolded in the garage. Additionally, the court needs more information about the circumstances surrounding Avila's consent to search her home in order to determine whether her consent was coerced. Furthermore, most of the facts the parties have set forth are in dispute, and the government has submitted only police reports, not affidavits, to support its version of events. Finally, it is not clear to the court upon what facts Macias and Flores base their belief that they have standing to contest the search of the home, as they were not in the home at the time and it is clear to the court whether either of them lived in the home.

Based upon the differences in each side's account of events, as well as pertinent information unaddressed by either side, the court concludes that a hearing is needed in order to determine whether probable cause and exigent circumstances justified the agents' entry into the home, and whether Macias and Flores have standing to assert that evidence collected during the

search should be suppressed.  The court therefore defers ruling on the motion to suppress until after the parties have had the opportunity to present evidence at a suppression hearing.

## III.    Motion to Suppress Lopez's Statements to Police

After Lopez's arrest, agents read him the *Miranda* warnings and obtained from him written waivers.  After waiving his rights under *Miranda*, Lopez made statements that allegedly incriminated himself and his co-defendants.  The government contends that Lopez's waiver and statements were voluntary, but Lopez asserts that they were coerced and that his statements should be suppressed.

Lopez and the government tell very different stories about what occurred leading up to Lopez's incriminating statements.  According to Lopez, agents roughed him up after they arrested him, including shoving his face in dog excrement and beating him inside their vehicle. He also contends that he asserted his right to remain silent and asked to speak to his attorney, but that police continued interrogating and beating him.  The government denies most of these allegations.

Had agents acted as alleged, then Lopez's statement may very well have been coerced. Because of the differences in each side's story about the circumstances, the court must hear from the parties' witnesses in order to determine what happened and whether Lopez's statements were coerced.  The court therefore defers ruling on the motion to suppress until after the parties have had the opportunity to present evidence at a suppression hearing.

## IV.    Motion for Severance  [40-1]

Defendant Flores has filed a motion to sever his trial, in which Macias and Lopez have joined.  Flores argues he is entitled to a separate trial because both Macias and Lopez made post-

arrest statements to police in which they allegedly incriminated Flores. Under *Bruton v. United States*, 391 U.S. 123, 128 (1968), the government may not use at a joint trial statements made by one defendant that incriminate a co-defendant, unless the statements can be redacted so that the co-defendant is not named or otherwise identifiable.

The court does not have before it the post-arrest statements made by Macias and Lopez, but the parties appear to agree that the statements contain many references to Flores. Additionally, the government agrees that the statements made by Macias and Lopez cannot be adequately redacted, and therefore Flores is entitled to a separate trial. *See Gray v. Maryland*, 523 U.S. 125, 135-37 (1998) (redacted statements which deleted names and employed aliases, but which still permitted jurors to draw an inference that the statements referred to a co-defendant, violated *Burton*). However, the court has ordered a hearing to determine whether Lopez's statement should be suppressed. If suppressed, then trying Lopez and Flores jointly would not raise any *Bruton* issue. *See* 1A Charles Alan Wright, Federal Practice and Procedure §224, at 529 (3d ed. 1999); *see also United States v. Mearns*, 443 F. Supp. 1244, 1255-56 (D. Del. 1978) ("since I have already held that all of Mearns' statements to the police must be suppressed, the *Bruton* problem does not exist"). Therefore, the court defers ruling on Flores' motion to sever until after the court has ruled on Lopez's motion to suppress.

**V.     Motion for Immediate Production of Favorable Evidence [43-1]**

Lopez (joined by Flores and Macias) has moved for the immediate disclosure of all favorable evidence and evidence that bears upon the credibility of witnesses. In response, the government has acknowledged its continuing obligations under *Brady v. Maryland*, 373 U.S. 83

(1963) and *Giglio v. United States*, 405 U.S. 150 (1972) to disclose information that may be exculpatory or impeaching, and has committed to producing that evidence in a timely manner.

Given the government's assurances that it will comply with its obligations under *Brady* and *Giglio*, Lopez's motion must be denied as moot. *See United States v. Silesia Flavorings, Inc.*, No. 03 CR 851, 2004 WL 419904, at *6 (N. D. Ill. Mar. 1, 2004) (government's promise to comply with *Brady* rendered motion for exculpatory or impeaching evidence moot). The government has committed to provide the required evidence in a timely manner, but the court believes that a more concrete deadline of 30 days before trial is reasonable.

Therefore, Lopez's motion for the production of exculpatory and impeachment evidence is denied, and the government is ordered to produce its *Brady* and *Giglio* materials no later than 30 days before trial.

## VI.     Motion to Preserve and Produce Agents' Notes [44-1]

Defendant Lopez (joined by Macias and Flores) has also moved for the preservation and production of notes agents made during their investigation of the defendants. The government agrees with Lopez that law enforcement officers' notes should be preserved. Given the government's assurances, Lopez's request that the notes be preserved is moot.

Lopez also asks that the government produce copies of the officers' notes. However, the government has already produced to Lopez law enforcement reports that embody the substance of agents' notes. When agents have incorporated their notes into official reports that have been available to a defendant, that defendant is not entitled to production of the original notes. *See United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997). Accordingly, the court denies Lopez's request that the government produce agents' notes.

**VII.    Motion for Notice of Government's Intent to Use Evidence of Other Crimes [45-1]**

Finally, Lopez has filed a motion (joined by Macias and Flores) for notice of the government's intent to use evidence of his other crimes, wrongs, or acts, and the immediate disclosure of such evidence.  Federal Rule of Evidence 404(b) prohibits the use of evidence of other crimes, wrong or acts to prove character, although it can be used for other relevant reasons such as proof of motive, opportunity, preparation, or identity.  *United States v. Smith*, 103 F.3d 600, 602 (7th Cir. 1996).  However, before using 404(b) evidence, the government must first provide the defendant with reasonable advance notice.  Fed. R. Evid. 404(b).

The government has acknowledged its responsibility under Fed. R. Evid. 404(b) and it appears the parties differ only on the date by which the government should make its disclosure—the government commits to disclosing the information two weeks before trial, while Phillips wants the information now.  The rule requires only reasonable notice, and the court believes that requiring the government to disclose the information now—when the date for trial has not yet been set—would be unreasonable.  The court believes that a more reasonable requirement is that the government disclose the information 30 days before trial, the same date by which the government will provide the defendants with its *Brady* and *Giglio* materials.

Accordingly, Lopez's motion for immediate notice of the government's intention to use evidence of other crimes, wrongs and acts is denied; the government shall produce the requested materials no later than 30 days before trial.

## CONCLUSION

In summary, the motion filed by Macias and Flores to suppress evidence obtained during the search of Macias' van in California [51-1] is denied.  The motion to suppress evidence

obtained during the search of the Keating Avenue residence and garage [47-1] is denied as to the garage; as to the residence, Macias and Flores are entitled to a suppression hearing, after which the court will rule on the remainder of the motion to suppress. Defendant Lopez is entitled to a hearing on his motion to suppress his post-arrest statements to police [42-1], after which the court will rule on his motion. The court defers ruling on Flores' motion to sever [40-1] until after it rules on whether Lopez's post-arrest statement should be suppressed. Lopez's motion to preserve agents' notes [44-1] is denied as moot, and his request that the notes be produced is denied. Lopez's motion for the immediate disclosure of favorable and impeachment evidence [43-1] is denied as moot; however, the government shall produce the requested information no less than 30 days before trial. Lopez's motion for immediate notice of the government's intent to use evidence of other crimes or wrongs [45-1]is denied; the government shall produce such evidence no later than 30 days before trial.

The parties are directed to contact the court's minute clerk as soon as possible to schedule the suppression hearing. The status hearing scheduled for April 27, 2007, is cancelled. Any other necessary dates will be scheduled at the close of the suppression hearing.


ENTER:

Date:  April 19, 2007

Blanche M. Manning
United States District Judge